Calhoun M. Deringer et al., Plffs. in Err., *v.* Franklin Coxe et al.

The question of the validity of certain tax sales held to have been properly submitted to the jury.

After land has been sold to the county commissioners for the benefit of the county, in the case of nonpayment of tax, redemption can be accomplished only in the method prescribed by statute, and payment of the delinquent tax subsequent to such sale to the county commissioners will not invalidate a sale of the land thereafter made by them to a third party.

(Argued April 11, 1887. Decided April 25, 1887.)

January Term, 1886, No. 407, E. D., before MERCUR, Ch.

J., Gordon, Sterrett, Green, and Clark, JJ. Error to the Common Pleas of Luzerne County to review a judgment on a verdict for defendants in ejectment. Affirmed.

The facts appear from the charge to the jury by Hand, P. J., which was as follows:

This is an action to determine the legal title to one ninth of an undivided tract of land in the warrantee name of Samuel Rope, Sugarloaf township, Luzerne county. The trial was opened to ascertain the title of two ninths, one ninth alleged to be in favor of the Todds, heirs of Henry Deringer, and one ninth in Calhoun Deringer. The one ninth of the Todds has been released by deed to the defendants, and this leaves the question for you to consider as to the one ninth claimed by Calhoun M. Deringer.

The issue now is: Does Calhoun M. Deringer, or do the Coxe heirs, own this one ninth? This inquiry branches itself off into three questions for your consideration, in general calling for examination into the validity of three sales of these lands for taxes: one in 1820 to the county commissioners and then from the county commissioners to Henry Deringer in 1826; one in 1828, a sale to the county commissioners, and a subsequent treasurer's sale to Charles S. Coxe in 1834.

We propose to assist you in the decision of this case as best we can, so that you may come to a proper conclusion, premising that all questions of fact are solely for your decision, and that the law must be taken from the court. This places the serious and careful consideration of the evidence in your hands. Address yourselves to the ascertainment of the truth, and reach a proper conclusion under the weight of the evidence.

The deeds put in evidence show that on the 31st of September, 1794, Tench Coxe was the owner of this tract of land by purchase and conveyance, it being then located in the county of Northumberland. The tract remained in the family of Coxe without question until November 8, 1820, when it was sold for nonpayment of taxes, and bid in by the county commissioners. It remained with the commissioners for five years, when it was sold to Henry Deringer on the 6th of July, 1826.

Now, the first question of fact for you is: Was this sale regular? Under the law, land may be sold away from the owner for nonpayment of taxes. The law requires, however, the tech-

nical compliance with certain regulations. The land must be unseated; it must be assessed and returned to the county com. missioners, remaining so assessed for a period of two years. If the taxes for the two years are not paid, then in each succeeding period of two years the county commissioners must certify the land to the county treasurer, who is required to give notice according to law of the sale in June, and sell the lands for the taxes at that sale, or at some sale which is an adjournment of the June sale. If at the sale the tract put up does not bring a bid equal to the taxes and costs, then it is the duty of the commissioners to bid in the land for the benefit of the county and hold the title for five years, and then unless redeemed, after advertising according to law, sell the same at public sale.

Now, the first question is: Were the requirements of the law complied with? The land appears from the records to have been duly assessed, certified to the treasurer, sold to the commissioners (the taxes do not appear to have been paid on this first sale) and by the commissioners sold to Henry Deringer. The deed for this sale recites a compliance of the several steps according to act of assembly. This deed is dated in 1826, a long time ago, and is strong evidence at this late day that the steps required of the commissioners were complied with. These facts are such that they warrant you, if you so view them, in coming to the conclusion that the sale in 1826 to Henry Deringer was a valid sale. You will probably have little trouble in reaching this conclusion: that the sale passed a valid title to these lands in 1827 to Henry Deringer. That being the case, he then became the owner.

We charge you as matter of law that the acknowledgment of the deed on the 5th of June, 1827, and the payment of the consideration money four days afterwards, if the deed was delivered at that time, passed a good title. What we have to say with regard to this tract of land, and this sale, with reference to the regularity, applies to all the other sales upon the question of whether the commissioners complied with the requirements of the act of assembly. The sales were made so long ago that the recitals in the deed are sufficient to warrant the jury in coming to the conclusion that so far as the advertisements were concerned the sale was regular. This title in Henry Deringer was in the same condition as the title which Coxe had prior to the tax sale which

devested him of his title. The tract was liable for taxes and, if they were not paid, liable to be sold.

It is in evidence that the Samuel Rope tract was assessed in 1827 for state and county taxes. It was certified by the commissioners to the treasurer for the nonpayment of taxes. It was sold by the treasurer to the county commissioners on the 28th day of November, 1828, and the deed was made on the 15th of December, 1828. This, if a valid sale, placed the title in the hands of the commissioners for the benefit of the county, and the law required that the land should remain in the hands of the commissioners for five years unless redeemed, when they were obliged to sell it at public sale. During the time when the five years would run, the land was certified to the treasurer for the nonpayment of taxes of 1832 and 1833, and was sold by the treasurer in 1834 to Charles S. Coxe, on the 9th of June, 1834. The deed was acknowledged in court on the 4th of August, 1834. Now, the question is: Did this sale vest a good title in Charles S. Coxe, or rather, was the title of Henry Deringer—the title which he acquired by the sale from the commissioners previously —devested from him?

[If the taxes were unpaid when the sale took place to the commissioners, then we say to you that the sale of the 28th of November, 1828, vested a good title in the commissioners, and that title could only be devested by a redemption in the manner provided by law, or by a sale.] If, however, the taxes on which the sale took place were paid, then no title passed to the commissioners. It is contended by the plaintiffs that the taxes were paid.

Now, you will bear in mind that the treasurer of the county made a deed of the land in pursuance of that sale to the county commissioners on the 28th day of November, 1828; and this deed recites that the taxes were not paid. Now, what is the evidence on this point on the one side and the other, for here is one of the great points of contention? The defendants have shown the deed and its recital. The sale book of 1834 is gone, for which no one connected with this case can be held responsible. They show the entry in the commissioners' transcript book that the payment of these taxes was made on the 10th day of January, 1829, by J. Bittenbender. This was after the sale, for the sale took place on the 28th of November, 1828. This is the only record or written evidence we have of the time when they were

paid. If they were paid on that day, as the record shows, and were not paid previous to that, then the sale to the commissioners was a good and valid sale.

The plaintiffs, however, claim that they have shown an earlier payment; and they claim this by the evidence of the plaintiff, C. M. Deringer, in this suit, who testifies that he thinks the receipt for taxes was dated on the 10th of November, 1828, which would be before the sale. He is the only person who fixes the date. This raises a question of fact for you to decide, and we submit it to you. You must decide it from the weight of the evidence. I will not recall all the evidence on this point; it has been argued by the counsel on both sides very ably and forcibly. It is in evidence that Henry Deringer kept his receipts carefully; that he arranged them methodically; that several persons saw these receipts, and they were complete from 1826 to 1840, with a gap of four years after that. None of them swear to the dates of the receipts, except the plaintiffs; they swear only to the years, not to the month nor the day. None of them swear to seeing two receipts, and, if I recollect right, the plaintiff does not swear that he saw two receipts. But the plaintiff asks you to infer that there were two receipts, and this solely upon his testimony, not that he saw two but that he saw one dated, he thinks, the 10th of November, 1828.

Now, does the plaintiff swear to the truth, or is he mistaken? I need not say to you that upon the general principles documentary evidence, and that upon the record, is less liable to mistake than human memory. Nevertheless, both are legitimate evidence to go to the jury, and you must weigh them carefully and decide. It is argued strongly from other facts in the case, the number of years in which taxes were paid and the methodical character of Henry Deringer, that there is great probability that he did pay the taxes for that year.

You understand that the burden is on the plaintiff to prove to your satisfaction that he did pay the taxes before the sale, in order to annul the sale of 1828 to the commissioners. You must find from the evidence properly, as a fact, that the taxes were so paid, before the sale can be avoided. Now, if the sale to the county commissioners in 1828 was valid, then we say to you that the sale to Charles S. Coxe in 1834 vested a good title in him to this tract of land; and although the treasurer was premature when he sold the tract at public sale to Coxe, nevertheless this

irregularity—the sale being made after the period of five years had run on the title in the commissioners' hands—was not such an irregularity as rendered the sale void. The county could not sell and make a title, and then afterwards repudiate it.

[We say also, as matter of law, that the only manner in which Henry Deringer could defeat this title in the commissioners was by a technical redemption as required by law.]

When the land was sold to the county commissioners that was a public act of record, and notice to all the world; and when Henry Deringer or his agent came to pay the taxes he ought to have redeemed the land if he wished to protect his title. This he did not do, but chose to pay the taxes.

If you find the sale to the commissioners in 1828 was a valid sale, you need not consider the question of the payment of taxes in 1832 and 1833, the defendants would be entitled to recover; but if you find the sale to the commissioners in 1828 was not valid, by reason of the payment of the taxes by Henry Deringer before the sale, then this raises another question of fact for you. Were the taxes of 1832 and 1833 paid? If they were not paid before the sale, then the treasurer's sale to Charles S. Coxe, in 1834, was a valid sale, and the defendants would be entitled to recover. If the taxes were paid in 1832 and 1833, then the sale of 1834 was not a good sale.

Now, upon this question, you have the evidence of the sale and the deed of the treasurer, reciting the nonpayment of taxes. There is no entry on the record, and no receipt is produced showing a payment before the sale. It is, however, claimed by the plaintiffs in this case, as in the other, that they showed payment by the receipts which they claim were lost and destroyed. They marshal the same array of facts and circumstances, as sworn to by the several witnesses in the case, to convince you that the taxes were paid. It is for you, gentlemen of the jury, in case you reach this part of the case, to determine this question according to the weight of the evidence.

We wish to state to you a few general propositions, and do it in this way, rather than to examine and undertake to meet in detail the points raised on the one side and the other: Taxes upon unseated land are assessed against the land itself, and not against the person of the owner. The commissioners may deal with individuals whom they suppose to be the owners, but that does not make them owners; the title must settle the truth of

the ownership. We further say to you that after a tax has been assessed, not paid, and a sale takes place according to law and a deed is delivered, the officers of the county cannot affect that title by entering, subsequent to the day of the sale, a statement that the taxes were paid before sale. Nor will the accounts of the auditors of themselves, as shown in this case, of a date subsequent to the sale, have the effect of fixing a payment of taxes before the sale. That may be evidence of payment before the audit, but not of a payment as of a date prior to the sale.

We have been requested to charge you upon several points by the plaintiffs and the defendants, which we will proceed to do.

The counsel. for the defendants respectfully request us to charge the jury as follows:

*First.* That if the taxes of 1827 and 1828, for the nonpayment of which the land was sold by the treasurer, were not paid until after the treasurer's sale of November 28, 1828, the verdict must be for the defendants.

*Per Curiam:* We answer this point in the affirmative. We have practically so charged you in our general charge.

Now we will answer the points submitted to us upon the part of the plaintiffs, which are as follows:

*First.* The land purchased by the commissioners at the treasurer's sale of November 28, 1828, became, after five years from that sale, absolutely and indefeasibly vested in the commissioners for the use of the county.

*Per Curiam:* Assuming that you find that sale regular, we affirm this point, as correct. . . .

*Fourth.* The uncontradicted evidence is that the land was assessed during each of the five years after the alleged sale of 1828, excepting in 1832 and 1833, in the name of Henry Deringer as reputed owner, just as they should have been assessed if the land was owned by Henry Deringer, and if Henry Deringer paid to the treasurer the taxes for 1827, 1828, 1829, 1830, and 1831. Such action is not consistent with the theory that the county owned the land, but it is consistent with the theory that it was owned by Henry Deringer.

The receipt of the taxes under such circumstances is an equitable redemption of the land by Henry Deringer, and in any event estopped the county and all claiming the lands by or

through said sale of 1828. This upon the equitable principle that the county could not have both taxes and the land.

*Per Curiam:* We cannot affirm this point as it is drawn, and answer it in the negative. If Henry Deringer saw fit to pay the taxes during those years when it was in the hands of the commissioners instead of redeeming it, he must suffer the consequences of so doing, under the law.

*Fifth.* If from all the evidence the jury are satisfied that the taxes for 1832 and 1833 were paid before the sale of June 9, 1834, that sale was and is null and void, and passed no title to Charles S. Coxe; nor did it in any way affect the title of Henry Deringer to this land.

*Per Curiam:* We can only affirm this point in case you find the taxes of 1826 and 1827 were paid before the sale to the commissioners. If they were not paid before the sale, then this point is not correct.

[Now to recapitulate: If you find under our instructions that the tax sales of 1820 to the commissioners, and of the commissioners in 1826 to Henry Deringer, were regular as to the advertisement, that placed a legal and valid title to this tract in Henry Deringer.] If you find the sale of 1828 was a sale made when the taxes were not paid, then it passed a good title to the county commissioners, and the sale of 1834 to Charles S. Coxe is a good sale, and your verdict should be for the defendants. If the taxes were paid in 1827 and not paid in 1832 or 1833, then the sale of 1834 to Charles S. Coxe was a good sale, and your verdict should be for the defendants. If the taxes for 1827 and the taxes for 1832 and 1833 were paid before the sale, then the plaintiffs are entitled to recover.

Verdict and judgment for defendants.

The assignments of error, *inter alia,* specified the portions of the charge inclosed in brackets and the answers to the points given above.

R. *Calhoun Deringer* and *Amos Briggs* for plaintiffs in error.

*Andrew H. McClintock, Francis I. Gowen, S. P. Wolverton,* and *Franklin B. Gowen* for defendants in error.

Per Curiam:

We have given to the evidence in this case a due examination, and to the able argument of the counsel for the plaintiffs a care-

ful consideration. The validity of the tax sales depended upon facts proper to be submitted to the jury. Those facts were clearly and correctly submitted. We discover no error in the rejection of evidence, nor in the answers to the points submitted. We find no just cause for reversing the judgment.

Judgment affirmed.